**STATE ex MOWRER v UNDERWOOD et**

Ohio Appeals, 9th Dist, Summit Co.

No. 3156. Decided March 30, 1939

Hutchison & Firestone, Akron, for plaintiff.

Wade DeWoody, Dir. of Law, Akron, Harold L. Mull, Asst. Dir. of Law, Akron, and Gillum H. Doolittle, Akron for defendants.

## OPINION

### By DOYLE, J.

This is an original action in mandamus brought on behalf of the city of Akron (the law director of the city of Akron upon request of the relator, E. Omar Mowrer, having refused to institute the action) to compel the defendant Charles F. Bassett as personnel director of the city of Akron, and the defendants Aldrich B. Underwood, Kenneth A. Mason and Arthur Wigley, as the civil service commission of the city of Akron, to establish civil service eligible lists for positions in the department of public health of the city of Akron, and to compel the defendant Melville D. Ailes, as director of public health, and the defendants W. R. Murphy, David Alexander, L. E. Brown, James G. Blower and Ross R. Ormsby, as the health commission of the city of Akron, to make appointments from eligible lists so prepared to fill the various positions in the department of public health.

It appears in the record that there exists in the city of Akron a board of health consisting of five persons, and that David Alexander, one of the members, was elected president by vote of his associate members, and is so acting. The appointments to this board are and have been made by the mayor of the city without the confirmation of the council. The said board has working under its authority a health commissioner and approximately seventy-four public health nurses, clerks, stenographers, etc. These persons perform the duties imposed by the state laws and the charter of the city of Akron upon boards of health generally.

It is claimed by the relator that in the department of health there are approximately seventy-four employees, which number includes nurses, assistants, and stenographers; that some of them are holding positions which should come within the classified service of the civil service and therefore should be appointed in compliance with the civil service regulations of the city of Akron.

The question before this court and the question dispositive of the case is whether the department of public health, as it exists, is a department of the city government, functioning under the provisions of the city charter, or whether it is a separate governmental agency of the state, functioning by virtue of the laws of the state If its existence is due to the former, the municipal civil service rules, as provided in the charter, apply, and the prayer of plaintiff's petition must be granted; while if its existence is due to the latter, the state law applies, which does not provide for civil service requirements.

In the year 1918, the voters of the city of Akron adopted a charter form of government. It became effective January 1, 1920.

Provision was made in the charter for a "department of public health" (Sec. 78), to consist of a health commission composed of five citizens to be appointed by the chief administrator (mayor). Provision was likewise made for the appointment by the commission of a director of public health. The charter further provided (Sec. 79) that "The health commission shall have all of the powers which are conferred by law and by the constitution of Ohio upon municipal boards of health."

On April 17, 1919, the year following the adoption of the charter, but before it became effective, the legislature of the state of Ohio enacted the Hughes Act, 108 Ohio Laws, pt. 1, 236 et seq. This act was to become effective on January 1, 1920. This date was also the effective date of the city charter, supra. Subsequent to the enactment of the Hughes Act, the legislature on December 18, 1919, passed the so-called Griswold Act, 108 Ohio Laws, pt. 2, 1085, et seq., which amended and repealed certain sections of the Hughes Act. This act became effective January 2, 1920.

(Whether all of the provisions of the Hughes Act were in force during January. 1, 1920, is not material herein, but on this general subject see **Mott v Fulton, 21 Abs 366,** and cases therein cited.)

It is apparent from the language of the legislature in the Hughes and Griswold Acts that, so far as municipalities were concerned, it intended to withdraw much of the power previously granted in health matters, and reserve it to the state, and, by so doing, to abolish municipal boards of health which had been previously established. and compel the establishment of boards of health in city health districts which, as to matters provided by state laws, were to be distinct governmental agencies, disconnected from the respective municipalities and not subject to their jurisdiction.

**Board of Health of City of Canton et v State ex O'Wesney, 40 Oh Ap 77.**
**State ex Hanna v Spitler, et, Board of Health of City of Findlay, 47 Oh Ap 114.**

The legislative intent was undoubtedly predicated upon the fact, well stated by Donahue, J., in **State Board of Health v City of Greenville, 86 Oh St 1, at p. 29,** that "The health of the inhabitants of the city is still a matter of concern to the state, and of such vital concern that the general assembly has not thought proper to commit exclusively to the control and discretion of men who may or may not have any particular ability or experience in sanitary affairs. The loss of a single life is a direct economic loss to the state, and, therefore it wisely refrains from committing to inexperienced people final discretion as to the means and methods of preserving the life and health of its citizens, but aside from the concern of the state for the health and comfort of the residents of any one city, its vigilance seeks to serve a larger purpose. Cities are no longer enclosed by stone walls and separate and apart from the balance of the state. The sanitary condition existing in any one city of the state is of vast importance to all the people of the state, for if one city is permitted to maintain unsanitary conditions that will breed contagious and infectious diseases, its business and social relation with all other parts of the state will necessarily expose other citizens to the same diseases. With the wisdom or folly of withholding from the local authorities final discretion over these matters, we are not concerned."

In the instant case the board of health of the city of Akron was apparently organized or reorganized under the provisions of the charter. It has elected its own president, and the members, although appointed by the mayor, have not been confirmed by the city council. It has appointed a health commissioner, and the department is functioning efficiently with its staff of employees. Sec. 4404 GC, provides "The council of each city constituting a city health district" (the territorial limits of the city of Akron constitute a city health district) "shall establish a board of health, composed of five members to be appointed by the mayor and confirmed by the council, to serve without compensation, and a majority of whom shall be a quorum. The mayor shall be president by virtue of his office. Provided that nothing in this act contained shall be construed as interfering with the authority of a municipality constituting a municipal health district, making provision by charter for health administration other than as in this section provided." **(108 Ohio Laws, pt 2, 1092; 108 Ohio Laws, pt. 1, 247.)**

Sec. 4408 GC, provides "In any **city** health district, the board of health **or person or persons** performing the duties of a board of health shall appoint for whole or part time service a health commissioner and may appoint such public health nurses, clerks, physicians, and other persons as they deem necessary." (Emphasis ours.)

**108 Ohio Laws, pt. 2, 1092; 108 Ohio Laws, pt. 1, 248.**

From the effective date of the Hughes and Griswold Acts, supra, the state of Ohio automatically made █ the board of health of the city of Akron an agency of the state, independent of the municipality, and even though there was a failure to comply with state law in respect to the mayor acting as its president, and the confirmation of the appointment of its members by the city council, nevertheless the appointment, by the board, of a commissioner of health, public nurses, clerks, etc., was authorized by §4408 GC, supra, wherein it is provided that such appointments shall be made by "the board of health **or person or persons** performing the duties of a board of health." The power of appointment existed whether or not the members of the board were de jure or de facto members.

It is urged that in view of the fact that the city of Akron is a charter city it has the power of local self-government in so far as the administration of health is concerned; "that the provisions of the city charter are not in conflict with the general laws but are in compliance therewith."

**Art. XVIII of the Constitution of the State of Ohio** provides in part:

"Sec. 7. Any municipality may frame and adopt or amend a charter for its government and may, susbject to the provisions of §3 of this article, exercise thereunder all powers of local self-government."

"Sec. 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In respect to **Art. XVIII, Sec. 3,** supra, the Supreme Court of Ohio has decreed that "1. The provisions of **Art. XVIII of the Constitution** * * * do not deprive the state of any sovereignty over municipalities in respect to █ sanitation for the promotion or preservation of the public health which it elects to exercise by general laws."

In the court's opinion, the following pertinent language is used: "The surrender of the sovereignty of the state to the municipalities by that article" (XVIII) "was a partial surrender only, and, with reference to sanitary regulations, was expressly limited to such sovereignty as the state itself had not or thereafter has not exercised by the enactment of general laws. With respect * * * to local sanitary regulations, the municipalities are in no different situation since the adoption of Article XVIII than they were before, except that before the adoption of that article they had such power to adopt local sanitary regulations as had been conferred upon them by the Legislature of the state, and since the adoption of that article they have such power to adopt local sanitary regulations as has not been taken away from them by the Legislature in the enactment of general laws. Therefore that article, instead of being a limitation upon the power of the Legislature to enact general legislation upon the subject of sanitation, is a revervation of such power to the Legislature. In other words, the grant of power in that respect to the municipality by the Constitution is made subject to the limitation of general laws theretofore or thereafter enacted by the Legislature."

**City of Bucyrus v State Dept. of Health, et 120 Oh St 426.**

The framers of the constitution, in providing for charter cities, especially recited that cities which adopted char-

ters "may * * * exercise thereunder all powers of local self-government" (**Art. XVIII, Sec. 7**), subject, however, to the provisions of **Art. XVIII, Sec. 3, of the Constitution.** The Supreme Court of this state in **City of Bucyrus v State Dept. of Health et,** supra, has construed **Art. XVIII, Sec. 3.** Logic impels but one conclusion: that charter cities have no different standing in respect to sanitary regulations than do non-charter cities. And in construing the latter part of §4404 GC, which specifically provides that municipalities may make provision "by charter for health administration other than as in this section provided," this court holds that after cities have complied with the mandatory laws of the state by providing a health board, and by doing the things provided for by general law in respect to health, they may then by charter provision or otherwise provide for additional health administration beyond that provided for in §4404 GC, as long as it does not conflict with state regulations.

Concluding as we do that the present board of health is a distinct agency of the state government, separate from the municipality and not subject to its jurisdiction as to matters provided for by state laws, it follows that the municipal civil service regulations do not apply to its employees.

The state laws now in force do not provide for a civil service status for any of the employees in this agency. The Hughes Act, supra, contained a provision for civil service. The legislature shortly thereafter, in the Griswold Act, repealed that provision, before the date set for the going into effect of the Hughes Act, undoubtedly on the theory that the type of work necessary for the efficient handling of health and sanitation required experienced experts, and professional or semi-professional employees, the qualifications of whom were difficult of accurate ascertainment by civil service tests conducted by persons who did not necessarily have to have any especial qualifications to be the examiner or examiners.

For the reason that the legislature of Ohio does not give a civil service status to employees of this department, the petition of the plaintiff is denied, at the costs of the relator.

WASHBURN, PJ. & STEVENS, J., concur.